930 F.2d 913
 19 U.S.P.Q.2d 1439, 19 Media L. Rep. 1019
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WOVEN ELECTRONICS CORPORATION, Plaintiff-Appellee,
v.
The ADVANCE GROUP, INCORPORATED, d/b/a Advance Wire & Cable,
Defendant-Appellant.
WOVEN ELECTRONICS CORPORATION, Plaintiff-Appellant,
v.
The ADVANCE GROUP, INCORPORATED, d/b/a Advance Wire & Cable,
Defendant-Appellee.
 Nos. 89-1580, 89-1588.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 9, 1991.
Decided April 15, 1991.
As Amended May 6, 1991.
 
 Appeals from the United States District Court for the District of South Carolina, at Greenville. G. Ross Anderson, Jr., District Judge. (CA-88-1424-6-3)
 William Marvin Grant, Jr., Grant & Leatherwood, Greenville, S.C., John J. Dacey, Jr., McKenna & Fitting, San Francisco, Cal. (Argued), for appellant: J. Brantley Phillips, Jr., Natalma M. McKnew, Leatherwood, Walker, Todd & Mann, P.C., Greenville, S.C., on brief.
 David Lynn Freeman, Henry L. Parr, Jr., Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C. (Argued), for appellee: Wallace K. Lightsey, Wyche, Burgess, Freeman & Parham, P.A., Greenville, S.C., on brief.
 D.S.C.
 AFFIRMED AND REMANDED.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM.
 
 
 1
 The Advance Group, Inc. ("Advance") appeals from the judgment entered by the district court following a jury verdict in favor of Woven Electronics Corp. ("Woven"). Woven cross-appeals from the district court's failure to seal the courtroom during trial. For the reasons set forth more fully below we affirm the judgment in favor of Woven and remand to the district court for a determination of what portions of the record should be sealed.
 
 
 2
 Woven is a South Carolina corporation with its principal place of business in Greenville County, South Carolina. Advance is a California corporation with its principal place of business in California, and with production facilities in Greenville County, South Carolina. Woven and Advance are engaged in the manufacture of specialized woven wire cables for use by defense contractors and private industry. These cables are produced with conventional fabric looms which have been modified to interweave electrical or other conductors with nylon support threads.
 
 
 3
 Woven seeks recovery from Advance on three theories: misappropriation of trade secrets;[1] inducement of former Woven employees to breach their duty not to disclose trade secrets; and inducement of former Woven employees to breach nondisclosure agreements.
 
 
 4
 * In the 1960s Woven's corporate predecessor began developing a methodology for producing woven wire cables. Woven was successful and eventually became the sole supplier of the wiring harnesses used in portions of the VLS, Hellfire, Patriot, and Maverick military programs. C. Blake Morgan served as Woven's national sales manager prior to his termination in March 1985. In April 1985 Advance announced it had hired Morgan as its southern regional manager. Over time, other employees of Woven were also hired by Advance. Within two years of Blake's hiring Advance began to compete with Woven to provide wiring harnesses for the military programs then supplied by Woven. On some of the projects almost all of the Advance employees assembling the harnesses were former Woven employees performing the identical functions that they had for Woven. There was testimony that Advance employees attempted to elicit information from current and former employees of Woven. There was also evidence that Advance's manufacturing process was a "mirror image" of the process developed by Woven over a number of years. Advance was eventually awarded contracts to supply some of the harnesses previously supplied by Woven.
 
 
 5
 At the outset of the case the district court entered a protective order that had been agreed to by both parties. The order allowed either party to designate material as confidential; such a designation would limit its distribution to opposing counsel, experts, and one corporate representative. Material designated as confidential was to be placed under seal when filed with the court. Both the original order and subsequent amended versions of the order contained provisions allowing the parties to request that the district court close the courtroom whenever confidential information was to be revealed.
 
 
 6
 On the first day of trial Woven moved that the courtroom be closed. Though no objection was voiced to Woven's motion, the district court denied the motion. Trial lasted seven days and testimony was heard from 36 witnesses. The jury found in favor of Woven on all three theories and returned a verdict in the amount of $3,826,000 in actual damages. Judgment was entered on the jury's verdict and Advance moved for judgment notwithstanding the verdict. The district court denied the JNOV motion but ordered Woven to remit $1,475,343.
 
 
 7
 Advance filed a timely appeal from the final judgment and from the denial of its JNOV motion. The appeal raises four basic issues: (1) whether the nondisclosure agreements signed by Woven's former employees should have been excluded from evidence; (2) whether Woven proffered evidence as to the existence of trade secrets; (3) whether Woven produced evidence that Advance was the proximate cause of Woven's damages; and (4) whether Woven's evidence as to the amount of damages was too speculative and conjectural. Woven cross-appealed from the district court's denial of its motion to seal the courtroom. Woven's cross-appeal raises a single issue: whether the district judge abused his discretion in failing to seal the courtroom and whether Woven is entitled to have the record sealed to prevent further dissemination of trade secrets. We granted Woven's motion to seal the record in this case pending our decision on its cross-appeal.
 
 II
 
 8
 The standard of review on appeal of a denial of a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, is whether there is evidence upon which a jury could properly find a verdict. Austin v. Torrington Co., 810 F.2d 416, 420 (4th Cir.), cert. denied, 484 U.S. 977 (1987). Our role is not to weigh the contrasting evidence, nor to judge the credibility of witnesses, nor to substitute our judgment of the facts for that of the jury. Id. Against this background, though, a "scintilla" of evidence is not enough to sustain a verdict, and any inferences drawn by the jury must be "reasonably probable"; mere speculation is insufficient. Id.
 
 
 9
 The first determination which must be made in a trade secrets case is whether, in fact, there was a trade secret to be misappropriated. Servo Corp. of America v. General Elec. Co., 393 F.2d 551, 555 (4th Cir.1968). Since this is a diversity case, South Carolina law controls. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). In Lowndes Prods., Inc. v. Brower, 259 S.C. 322, 191 S.E.2d 761 (1972) (per curiam), the South Carolina Supreme Court adopted the definition of trade secret set forth in Comment b to Sec. 757 of the Restatement of Torts.
 
 
 10
 A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound, a process of manufacturing, treating or preserving materials, a pattern for a machine or other device, or a list of customers. It differs from other secret information in a business in that it is not simply information as to single or ephemeral efforts in the conduct of the business.... A trade secret is a process or device for continuous use in the operation of the business. Generally it relates to the production of goods....
 
 
 11
 A trade secret can exist in the unique combination of otherwise known components; although each of its parts, by itself, may be in the public domain, the unified process, design and operation of the combination may be the essence of the secret....
 
 
 12
 [A]n unique combination of generally known elements or steps can qualify as a trade secret, if it represents a valuable contribution attributable to the independent efforts of the one claiming to have conceived it. The combination must differ materially from other methods revealed by the prior art.
 
 
 13
 Id. at 327-28, 191 S.E.2d at 764-65. See also Wilkes v. Pioneer Am. Ins. Co., 383 F.Supp. 1135, 1139 (D.S.C.1974). The burden of proving the existence of a trade secret falls upon the plaintiff. Brower, 259 S.C. at 329, 191 S.E.2d at 765. In light of the preceding definition we conclude there was ample evidence before the jury to support a finding that trade secrets were involved.
 
 
 14
 While much of the basic technology involved in making woven wire is drawn from the textile industry and is thus clearly in the public domain, there was expert testimony that Woven had made numerous modifications to, and improvements upon, this basic technology which rendered it unique. Under South Carolina law, a trade secret may exist solely in the manner in which a group of items is put to use, even though each of the items is itself within the public domain. Brower, 259 S.C. at 328, 191 S.E.2d at 764. Thus Advance's evidence that some of the technology may have been public knowledge, even if believed by the jury, does not defeat Woven's claims. Accord Servo Corp. of America, 393 F.2d at 555.[2] There was ample evidence to support a jury finding that not only was the weaving process a trade secret, but so were Woven's methods of assembling and testing the completed project.
 
 
 15
 In addition to establishing that the contested material was of the type that could constitute a trade secret, Woven's evidence was also sufficient to allow the jury to conclude that Woven had made appropriate efforts to keep the information secret. Intent to keep an idea or process secret is an essential requirement for protection as a trade secret. Brower, 259 S.C. at 329, 191 S.E.2d at 765. However, unlike Brower, the evidence here shows more than isolated attempts to protect the confidentiality of the information; it demonstrates a consistent effort on the part of Woven to keep secret the wire weaving process it used.
 
 
 16
 While Woven and Advance offered conflicting expert testimony on the trade secret question, the resolution of any dispute among the experts lay solely with the jury. We find that there was sufficient evidence favoring Woven, certainly more than a "scintilla," to support the jury's finding on the trade secret issue. Accordingly, the district court's denial of Advance's motion for judgment notwithstanding the verdict on this issue was proper. Having concluded that Woven did indeed demonstrate the existence of trade secrets, the crucial initial factor, we now turn to the remainder of Advance's claims.
 
 
 17
 All employees of Woven were required to sign a nondisclosure agreement (the "agreement"), a copy of which was introduced at trial by Woven without objection by Advance. Advance now contends that the agreement should have been excluded from evidence on the grounds of vagueness and overbreadth. Since Advance failed to make a timely objection at trial this Court can review the admission of the agreement only for plain error affecting a substantial right of the party. Fed.R.Evid. 103(d).
 
 
 18
 The nondisclosure agreement signed by Morgan and submitted to the jury stated in part:
 
 
 19
 [i]n consideration of Employee's [Morgan's] employment by employer [Woven], Employee agrees that Employee will not at any time hereafter disclose to others, or make or permit any use of any trade secrets of Employer including, but not limited to, knowledge of such Employer's specific customers and supplies, sales techniques, pricing methods, sales volume, particular parts, profit margins, manufacturing cost data, special manufacturing process and design and construction of parts, which information Employee may learn during his employment or by reason of Employee's employment by or Employee's confidential relationship with Employer.
 
 
 20
 Advance contends that the agreement did not give Woven's employees fair notice of what was considered to be a trade secret and what was not. Although agreements which seek to cover the universe of information which may be legitimately considered a trade secret must by necessity be drafted somewhat imprecisely, the present agreement was not impermissibly vague. It informed employees that specific customers, pricing methods, and profit margins were considered confidential. It also told employees that special manufacturing processes, and the design and construction of parts, were considered trade secrets. These types of information were precisely the types of secrets the jury found Advance to have used improperly.
 
 
 21
 Advance also argues that the agreement was overbroad because it would prohibit former employees from engaging in legitimate employment after their separation. Although South Carolina law views noncompetition agreements critically, those that are reasonable as to the territorial extent of the restraint and the period for which the restraint is to be imposed will be upheld. Almers v. South Carolina Nat'l Bank, 265 S.C. 48, 51, 217 S.E.2d 135, 136 (1975). The agreement at issue here contains no geographical or temporal restrictions on its duration, but the agreement is not, at least facially, a noncompetition agreement; it is a nondisclosure agreement. Though South Carolina courts have not addressed this specific question, other courts have recognized the important distinction between noncompetition agreements and nondisclosure agreements. See, e.g., Eden Hannon & Co. v. Sumitomo Trust & Banking Co., 914 F.2d 556, 561-62 (4th Cir.1990); WesleyJessen v. Armento, 519 F.Supp. 1352, 1361-62 (N.D.Ga.1981). A nondisclosure agreement may be valid even though it contains no time or place restrictions. Wesley-Jessen, 519 F.Supp. at 1361-62.
 
 
 22
 We therefore conclude that it was not plain error for the district court to allow the agreement into evidence. Our conclusion is strengthened by the fact that in the present case the jury was given a special verdict form which allowed it to indicate under which theory or theories it was finding for the plaintiff. The jury indicated that it found for Woven on all three theories put forth by Advance; the validity of the agreement was immaterial to the first two of the three theories.
 
 
 23
 Advance's remaining claims concern proof of proximate cause and damages. To recover, a plaintiff must show its damages have been proximately caused by the defendant's actions. Horne v. Beason, 285 S.C. 518, 521, 331 S.E.2d 342, 344 (1985). Under South Carolina law, a tortious act is a proximate cause of injury if, in a natural and continuous sequence of events, it produces the injury, and without it the injury would not have occurred. Shepard v. South Carolina Dep't of Corrections, 299 S.C. 370, 374, 385 S.E.2d 35, 37 (Ct.App.1989), citing Diggers v. City of Florence, 190 S.C. 309, 2 S.E.2d 790 (1939). See also Horne, 285 S.C. at 521, 331 S.E.2d at 344 (damages are proximately caused when they are "causally connected" to plaintiff's actions and "reasonably to be foreseen"). An act or omission need not be the sole cause of the injury in order to be a proximate cause. It is enough if the tortious act complained of is at least one of the causes without which the injury would not have occurred. Shepard, 299 S.C. at 374, 385 S.E.2d at 37.
 
 
 24
 The damages awarded were based solely upon past transactions; no damages were awarded for potential future injuries or expected future earnings. Woven met its burden of proving probable cause. On the VLS project Woven was the only bidder other than Advance. Woven had been the sole source in the past and there was no indication that the purchaser was likely to reject both bids. Had the contract not gone to Advance it would have gone to Woven. On the other projects Woven was the only other qualified bidder.[3] The evidence was sufficient to allow the jury to determine if Advance's acts were a proximate cause of Woven's losses.
 
 
 25
 The final issue raised by Advance's appeal concerns the adequacy of Woven's proof of the quantum of damages. Evidence of lost profits must establish the actual amount of damages to a "reasonable certainty." Drews Co. v. Ledwith-Wolfe Assocs., 296 S.C. 207, 214, 371 S.E.2d 532, 536 (1988).
 
 
 26
 Woven introduced the expert testimony of Jon Wilfong on the amount of damages. Advance did not offer expert testimony of its own, but attempted to discredit the testimony of Wilfong. Since Advance produced no expert of its own it offered no alternative method for computing the damages. The district court corrected what it concluded to be errors in Wilfong's calculations and ordered a remittitur by Woven of almost one-third of the original amount awarded by the jury. Woven's evidence established damages to a reasonable certainty. Accordingly, we affirm the award of damages below.
 
 
 27
 In summary, finding no merit in any of Advance's contentions on appeal, we affirm the judgment entered by the district court. We now turn to Woven's cross-appeal.
 
 III
 
 28
 Woven and Advance stipulated to a protective order entered into during the early days of the case which allowed either party to request that the courtroom be closed when evidence of trade secrets was to be presented. On the day trial commenced, after the jury had been impaneled but prior to opening arguments, Woven moved to close the courtroom. Although no one objected, the court denied the motion. Woven's cross-appeal alleges that the denial of its motion was an abuse of discretion and seeks to have the record in this case sealed to prevent future release of its trade secrets.
 
 
 29
 It is undisputed that judicial proceedings are generally open to the public and that there exists a right of public access to judicial records and documents. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980) (plurality opinion); Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978); In re Washington Post Co., 807 F.2d 383, 390 (4th Cir.1986). It is also uncontested, however, that this right of access is not unlimited. Nixon, 435 U.S. at 598. One exception to the public's right of access is where such access to judicial records could provide a "source[ ] of business information that might harm a litigant's competitive standing." Id. Other courts have specifically recognized an exception to the public's right of access when a case involves trade secrets. Valley Broadcasting v. United States District Court, 798 F.2d 1289, 1294 (9th Cir.1986); In re Iowa Freedom of Information Council, 724 F.2d 658 (8th Cir.1983); Brown & Williamson Tobacco Co. v. FTC, 710 F.2d 1165, 1180 (6th Cir.1983).
 
 
 30
 The existence of this exception does not mandate the closure of every trial that involves trade secrets, however. Where a party or a member of the public voices an objection to closure a district court must provide that person a reasonable time to state his objections. In re Iowa Freedom of Information Council, 724 F.2d at 661. The court should then make an initial in camera determination as to whether trade secrets are likely to be involved. Id. at 662. If such a finding is made the court may then close the courtroom. Id. In the present case, however, no one objected to Woven's motion. This does not mean that the courtroom had to be closed. In light of the important public interest, the district court should have conducted an initial examination into and determination on the trade secret question. As was ultimately established by the jury's verdict, trade secrets were involved in this case; consequently, an order closing the courtroom during the times when trade secrets were to be exposed would have been proper.
 
 
 31
 Given the present posture of this case nothing can be done to remedy the situation at trial. However, an obvious corollary to our conclusion is a requirement that the district court record be sealed to the extent necessary to prevent the release of trade secrets. In most cases this will not require a blanket sealing of the entire record. The district court should review the entire record of the trial, including the exhibits and transcripts if any, and seal only those portions necessary to prevent the disclosure of trade secrets. Id. at 663-64. Such a partial sealing strikes an appropriate balance between the public's right of access to judicial records and proceedings and the parties' legitimate interest in the protection of sensitive proprietary information. We emphasize, however, as did the court in In re Iowa Freedom of Information Council, that we are not announcing a blanket rule that the presence of trade secrets will in every case and at all events justify the closure of a hearing or trial. In these sensitive situations courts must proceed cautiously and with due regard to the unique facts involved in each case. Id. at 664.
 
 IV
 
 32
 In conclusion, we affirm the district court's judgment in all respects and we find that Woven's cross-appeal is meritorious. Accordingly, we remand this case to the district court for a determination of what portions of the record are to be sealed to prevent further dissemination of trade secrets.
 
 
 33
 AFFIRMED AND REMANDED.
 
 
 
 [1]
 Woven alleged the misappropriation of two basic categories of trade secrets: technological information relating to the assembly and testing of woven cables, and sales information concerning customers, prices, and costs
 
 
 [2]
 We do not believe in those instances where the extent of disclosure is arguable, and where the information had not been clearly placed in the public domain, [a defendant] should be allowed to avoid the consequences of the breach of confidence by piecing together, in retrospect, bits of information which had been disclosed in a variety of places and which as a combination were not clearly a matter of public knowledge
 Servo Corp. of America, 393 F.2d at 555.
 
 
 [3]
 A qualified bidder is one whose product has been previously examined and accepted by the purchaser. While nonqualified manufacturers are apparently allowed to participate in the bidding process, they generally receive only small orders